UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIRGINIA RICHTER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF EDWARD MATZURA, DECEASED,<br><br>Plaintiff,<br><br>v.<br><br>THE BALTIMORE LIFE INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 3:24-CV-0038<br><br>(SAPORITO, J.) |

MEMORANDUM

This matter is before the court on the motion to dismiss (Doc. 8) filed by the defendant, the Baltimore Life Insurance Company ("Baltimore Life"). The parties have briefed the motion. (Doc. 9; Doc. 12; Doc. 17). For the reasons set forth herein, we will deny the motion in part and grant the motion in part.

I. Statement of Facts[1]

The plaintiff, Virginia Richter, individually and as administratrix of the estate of Edward Matzura, deceased, initiated this action by filing

---

[1] The facts are taken from the allegations of the complaint. (Doc. 1).

a complaint (Doc. 1) on January 9, 2024. The complaint contains a count for breach of contract and a count for bad faith under 42 Pa. Cons. Stat. Ann. § 8371. The plaintiff is the surviving wife and widow of Edward A. Matzura, who died on December 5, 2022. Prior to Edward Matzura's death, Baltimore Life issued an insurance policy to Mr. Matzura containing a death benefit. The defendant additionally issued a supplemental "Accidental Death Benefit Rider" worth $100,000.00. The plaintiff is the third-party beneficiary of both the original insurance policy and the accidental death benefit rider.

Prior to 2020, Mr. Matzura had an opioid addiction resulting from opioid medications prescribed for his prior back and neck injuries. Mr. Matzura, however, had weaned himself off opioids by October 2020 in fear of that addiction. On October 20, 2020, Mr. Matzura began suffering from a series of wound-related issues on his lower right leg, and by October 2022, he experienced additional chronic back pain and nerve damage from an earlier neck surgery. To avoid resuming opioid medications, Mr. Matzura took four to eight aspirin per day as advised by one of his physicians.

On December 4, 2022, Mr. Matzura was taken to the Lehigh Valley

Hospital in Schuylkill County with shortness of breath, confusion, and balance-related issues. He was subsequently diagnosed with salicylate overdose, a chronic right leg ulcer, and other medical ailments. Mr. Matzura was then transferred to the Lehigh Valley Hospital in Allentown. By December 5, 2022, however, Mr. Matzura was found to be in salicylate toxicity and acute renal failure, later dying that same day. The death certificate listed the cause of death as "acute and chronic salicylate toxicity" and his death was determined to be accidental.

The plaintiff maintains that Mr. Matzura's death entitles her to the $100,000 death benefit under the accidental death benefit rider. Baltimore Life, however, argues that Mr. Matzura's death does not qualify as an accidental death necessary to trigger the accidental death benefit rider. (Doc. 9). Baltimore Life has now moved to dismiss the complaint. This matter is now ripe for review.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded

allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. Discussion

Both parties acknowledge that the defendant paid the plaintiff the benefits from the primary policy. The plaintiff contends that she is additionally entitled to the $100,000 death benefit under the accidental death benefit rider, a claim that the defendant has moved to dismiss on the basis that Mr. Matzura's death did not qualify as an accidental death necessary to trigger benefits from that policy. (Doc. 9). We find, however, that the plaintiff has adequately pled enough factual support to make plausible her breach of contract claim.

A party asserting a breach of contract claim must allege: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Alpart v. Gen. Land Partners, Inc.,* 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Both parties acknowledge the existence of the accidental death benefit rider. The disagreement between the parties turns on whether the defendant breached its duty when it refused to classify Mr. Matzura's death as an accidental death, or one "solely through external, violent, and accidental bodily injury," as required by the policy. (Doc. 1; Doc. 9).

The defendant moves to dismiss the plaintiff's breach of contract claim on the basis that the plaintiff has not pleaded sufficient facts to allege Mr. Matzura's death was violent or accidental. (Doc. 9). We disagree. First, at this stage, the plaintiff only needs to allege facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). We find that the plaintiff's allegations concerning Mr. Matzura's death make plausible the existence of an external, violent, and accidental bodily injury as required at the pleading stage.

Moreover, Baltimore Life argues that Mr. Matzura's death cannot be accidental because "[d]eath is a natural and expected outcome of overdosing on any drug." (Doc. 9, at 4). This interpretation implies that any death resulting from any medication cannot be accidental, regardless of its intended effects or medical supervision. Indeed, the accidental death benefit rider itself contradicts the defendant's assertion as it specifically carves out exceptions for the coverage of "the voluntary taking of any drug not prescribed for the Insured by a doctor" and "the voluntary taking of any drug prescribed for the Insured by a doctor and intentionally not taken as prescribed," rather than the taking of drugs in

its entirety. (Doc. 1).

Finally, Baltimore Life argues that even if we categorize Mr. Matzura's death as "accidental" for purposes of the accidental death benefit rider, we should rule in its favor because coverage for that benefit does not extend to deaths that "result[] solely or partly from: … the voluntary taking of any drug not prescribed for the Insured by a doctor." (Doc. 9, at 2). Nonetheless, the plaintiff has alleged that Mr. Matzura's aspirin consumption originated from the advice of his physicians. Therefore, the defendant's argument fails concerning the plaintiff's breach of contract claim. We will therefore deny the defendant's motion on this count.

Baltimore Life additionally moves, however, to dismiss the plaintiff's statutory bad faith claim brought pursuant to Pa. Const. Stat. Ann. § 8371, arguing that it had a reasonable basis to deny the claim. (Doc. 9, at 5). The statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.

> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. Under Pennsylvania law,

> The term bad faith includes any frivolous or unfounded refusal to pay proceeds of a policy. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing) through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

*Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (citations and internal quotation marks omitted). "These two elements– absence of a reasonable basis for denying a claim under the policy and knowledge or reckless disregard of the lack of such reasonable basis– must be proven by clear and convincing evidence." *Cozzone v. AXA Equitable Life Ins. Soc. of the U.S.*, 858 F. Supp. 2d 452, 458 (M.D. Pa. 2012) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 3d Cir. 1997)).

In deciding whether an insurer had a reasonable basis for denying benefits, a court must examine what factors the insurer considered in evaluating the claim. *See Terletsky v. Prudential Prop. & Cas. Ins. Co.*,

649 A.2d 680, 688–89 (Pa. Super. Ct. 1994). "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Condlio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2000)). "[M]ere negligence is insufficient for a finding of bad faith under Section 8371…." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 374 (Pa. 2017). Recklessness on the part of the insurer, however, can support a finding of bad faith. *Id.*

We find that the plaintiff has failed to allege the necessary elements of a claim for bad faith under § 8371. The plaintiff has not asserted any factual allegations from which we can infer that Baltimore Life lacked a reasonable basis for denying benefits. Indeed, the plaintiff's complaint acknowledges Baltimore Life held a reasonable basis for denial when it found that Mr. Matzura's death fell under an exclusion preventing the distribution of funds under that policy. *See* (Doc. 1, ¶ 26) ("Baltimore Life took the position that it was not obligated to pay the $100,000.00 accidental death benefit rider death benefit because of language … stating that there was an exclusion for 'a voluntary taking of any drug not prescribed for the Insured by a doctor.'"). While the plaintiff may disagree with the defendant's understanding of that exclusion, a mere

difference of language interpretation hardly constitutes a "frivolous or unfounded refusal to pay proceeds of a policy" required for a bad faith claim. *See Gray v. Allstate Indem. Co.*, No. 3:13-CV-1232, 2015 WL 758292, at *11 (M.D. Pa. Feb. 23, 2015) (finding no bad faith where an insurer's interpretation of ambiguous policy terms was reasonable); *see also Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 528 (M.D. Pa. 2007) (citing *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 574 (E.D. Pa. 2000)) ("If there is a reasonable basis for denying resolution of a claim, even if it is clear that the insurer did not rely on that reason, there cannot, as a matter of law, be bad faith."). In turn, because the plaintiff has failed to allege that Baltimore Life lacked a reasonable basis for denying benefits, it follows that the plaintiff has not adequately pled the second element of a bad faith claim, that Baltimore Life either knew or disregarded "its lack of reasonable basis in denying the claim." *Id.* Therefore, we grant Baltimore Life's motion to dismiss on the plaintiff's bad faith claim. We will, however, grant the plaintiff leave to file an amended complaint.

## VI.  Conclusion

For these reasons, the defendant's motion to dismiss will be denied

in part and granted in part. Baltimore Life's motion to dismiss the plaintiff's breach of contract claim will be denied, while its motion to dismiss the plaintiff's bad faith claim will be granted. The plaintiff, however, will be granted leave to file an amended complaint to plead a plausible bad faith claim. Failure to do so will result in the dismissal of this claim with prejudice.

    An appropriate order follows.


Dated: January 28, 2025          *s/Joseph F. Saporito, Jr.*
                                              JOSEPH F. SAPORITO, JR.
                                              United States District Judge